UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ISAAC KOLONZIAA and MICHELE MAY-JAVEED individually, and on behalf of all others similarly situated, | : : : : | Civil Action No.: 3:24-cv-00230(___) |
| Plaintiffs, | : : | |
| v. | : : | |
| ALLIED COMMUNITY RESOURCES, INC, ALLIED COMMUNITY SERVICES, INC and DEPARTMENT OF SOCIAL SERVICES FOR THE STATE OF CONNECTICUT | : : : : : : | February 21, 2024 |
| Defendants. | | |

COLLECTIVE AND CLASS ACTION COMPLAINT

I.     INTRODUCTION

1.     Employers must pay minimum wage and overtime hours to employees who work over forty hours in a week.  Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201, *et. seq.*; Connecticut Minimum Wage Act, ("CMWA") C.G.S. §  31-58 *et. seq.*

2.     Third party employers of employees engaged in live-in domestic service employment within the meaning of § 552.102 may not avail themselves of the overtime exemption provided by section 13(b)(21) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services. 29 C.F.R. § 552.109(c).

3.     In determining the number of hours worked by the live-in worker, the employee and the employer may exclude, by agreement between themselves, the amount of sleeping time, mealtime and other periods of complete freedom from all duties. 29

C.F.R. § 552.102(a), § 785.23. Under Connecticut labor law, this agreement must be "in writing." C.G.S. § 31-76b(2)(D).

4.  If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek. 29 C.F.R. § 778.112

5.  Employers must pay wages to employees for their meal breaks if that time is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997).

6.  Where … an employer furnishes lodging to his employees in addition to cash wages, the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined." 29 C.F.R. § 778.116.

7.  Employers of "live-in domestic service" employees must keep accurate records" showing the exact number of hours worked by the live-in domestic service employee[s]," including meals breaks that they worked through. 29 C.F.R. § 552.110(b).

8.  When a "live-in domestic service" employee's sleep period is "interrupted by a call to duty, the interruption must be counted [by the employer] as hours worked." 29 C.F.R. § 785.22(b). "[I]f the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time." *Id.* (emphasis added).

9.  Defendants employ "live-in  Caregivers" and assign them to live with Defendants' clients who require assistance caring for themselves throughout the day.

Defendants' live-in Caregivers perform non-exempt tasks including assisting Defendants' clients with personal care and activities of daily living such as showering, toileting, dressing, feeding, ambulating; assisting with meal planning and preparation; assisting with light home maintenance such as laundry, vacuuming, linen change, bathroom/kitchen cleaning; provide medical reminders, amongst other duties.

10.     Here, Defendants paid a day rate to their live-in Caregivers but did not pay the prevailing minimum wage, as required by law.

11.     Here also, Defendants paid a day rate to their live-in Caregivers but did not pay overtime for hours worked in excess of forty hours in a workweek at a rate not less than one and one-half times the regular rate, as required by law.

12.     The Named Plaintiffs were frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores. The Named Plaintiffs routinely failed to get five hours of uninterrupted sleep time because of these frequent interruptions. Defendants never accurately recorded all the hours the Named Plaintiffs worked when their sleep was interrupted at night time.

13.     As a result, Defendants kept hundreds of thousands of dollars in wages that they should have paid to the Named Plaintiffs and the class and collectives, all in violation of state and federal wage and hour laws.

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

15.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 since they are so related to her FLSA claims that they form part of the same case or controversy.

16.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

### III.    THE PARTIES

17.     Plaintiff, Isaac Kolonziaa, ("Named Plaintiff" or "Plaintiff" or "Mr. Kolonziaa") is an Individual who at all times relevant to this matter, resided within this judicial district. He worked as a live-in Caregiver for Defendants from approximately May 21, 2021, to approximately November 11, 2023.

18.     Plaintiff, Michele May-Javeed, ("Named Plaintiff" or "Plaintiff" or "Ms. May-Javeed") is an individual residing within this judicial district. She worked as a live-in Caregiver for Defendants from approximately December 9, 2020, to approximately May 30, 2023.

19.     Defendant Allied Community Resources, Inc ("Allied") is a corporation organized and existing under the laws of the state of Connecticut.  Its principal place of business is located at 6 Craftsman Road, East Windsor, CT 06088.

20.     The Defendant Allied, through its officers or delegates, interviewed and hired Plaintiffs and other live-in caregivers, determined their rates of pay and paid Plaintiffs and other live-in caregivers, trained, supervised and monitored the work schedules of the Plaintiffs and other live-in caregivers, and maintained control of the

employment records, including payroll, insurance, taxes of the Plaintiffs and other live-in caregivers.

21.    At all relevant times, Defendant Allied employed, and/or continues to employ, Plaintiffs and other similarly situated live-in Caregivers and is an employer of said employees under the FLSA, 29 U.S.C.A. § 203 (d) (""Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency.")

22.    At all relevant times, Defendant Allied employed, and/or continues to employ, Plaintiffs and other similarly situated live-in Caregivers and is an employer of is also an employer of employees under the CMWA Conn. Gen. Stat. Ann. § 31-58(d) (""Employer" means any owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees, including the state and any political subdivision thereof").

23.    Defendant Allied Community Services, Inc ("Allied Services") is a corporation organized and existing under the laws of the state of Connecticut.  Its principal place of business is located at 3 Pearson Way, Enfield, CT 06082.

24.    The Defendant Allied Services, through its agents, delegates or subsidiary, interviewed and hired Plaintiffs and other live-in caregivers, determined their rates of pay and paid Plaintiffs and other live-in caregivers, trained, supervised and monitored the work schedules of the Plaintiffs and other live-in caregivers, and maintained control of the employment records, including payroll, insurance, taxes of the Plaintiffs and other live-in caregivers.

5

25.     At all relevant times, Defendant Allied Services through its agent,(s), delegate(s) and or subsidiary employed, and/or continues to employ, Plaintiffs and other similarly situated live-in Caregivers and is an employer of said employees under the FLSA, 29 U.S.C.A. § 203 (d) (""Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency").

26.     At all relevant times, Defendant Allied Services through its agent(s), delegate(s) and or subsidiary employed, and/or continues to employ, Plaintiffs and other similarly situated live-in Caregivers and is an employer of is also an employer of employees under the CMWA, Conn. Gen. Stat. Ann. § 31-58(d) (""Employer" means any owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees, including the state and any political subdivision thereof").

27.     Defendant Department of Social Services for the State of Connecticut ("DSS") is a public agency organized and existing under the laws of the state of Connecticut. Its principal place of business is located at 55 Farmington Avenue, Hartford, CT 06105.

28.     The Defendant DSS, through its employees, agents, or delegates, interviewed and hired Plaintiffs and other live-in caregivers, determined their rates of pay and paid Plaintiffs and other live-in caregivers, trained, supervised and monitored the work schedules of the Plaintiffs and other live-in caregivers, and maintained control of the employment records, including payroll, insurance, taxes of the Plaintiffs and other live-in caregivers.

29. At all relevant times, Defendant DSS through its agent,(s), delegate(s) and or subsidiary employed, and/or continues to employ, Plaintiffs and other similarly situated live-in Caregivers and is an employer of said employees under the FLSA, 29 U.S.C.A. § 203 (d) (""Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency").

30. At all relevant times, Defendant DSS through its agent(s), delegate(s) and or subsidiary employed, and/or continues to employ, Plaintiffs and other similarly situated live-in Caregivers and is an employer of is also an employer of employees under the CMWA, Conn. Gen. Stat. Ann. § 31-58(d) (""Employer" means any owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees, including the state and any political subdivision thereof").

31. At all relevant times, Defendants have been and continue to be, employers of employees engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

32. Upon information and belief, at all relevant times, each Defendant is engaged in commerce or in the production of goods for commerce and has an annual gross volume of business done not less than $500,000, and or is an institution primarily engaged in the care of the sick, the aged, or mentally ill or defective who reside in the premises of such institution operated for profit or not-for profit, and or is an activity of a public agency, all as defined in 29 U.S.C.A. § 203(s)(1)(A),(B) or (C).

33.     Plaintiffs consent in writing to be party to this action, pursuant to 29

U.S.C. § 216(b). Each of the named Plaintiffs' written consent is attached hereto as

**Exhibits 1 and 2** and incorporated herein by reference.

## IV.    LEGAL PRINCIPLES

34.     Employers must pay overtime to their non-exempt workers who work over

40 hours in a work week. FLSA, 29 U.S.C. Sec. 201, *et seq*.; CMWA, C.G.S. Sec. 31-58,

*et seq*.

35.     Employers of live-in caregivers, who pay a day rate to these non-exempt

employees, must pay overtime by dividing their weekly pay by their weekly hours and

paying half the resulting regular rate for all overtime hours. 29 C.F.R. § 778.112.

36.     Third-party employers of "live-in domestic service" employees have a duty

to pay them overtime ( 29 C.F.R. § 552.109(c)), not less than one and one-half times the

regular rate. 29 U.S.C.A. § 207(a).

37.     Employers of "live-in domestic service" employees have a duty to pay

them not less than the minimum wage rate in effect. 29 U.S.C.A. § 206(f)

38.     Where … an employer furnishes lodging to his employees in addition to

cash wages, the reasonable cost or the fair value of the lodging (per week) must be added

to the cash wages before the regular rate is determined." 29 C.F.R. § 778.116.

39.     In determining the number of hours worked by the live-in worker, the

employee and the employer may exclude, by agreement between themselves, the amount

of sleeping time, mealtime and other periods of complete freedom from all duties. 29

C.F.R. § 552.102(a), § 785.23. In Connecticut, this agreement must be "in writing."

C.G.S. § 31-76b(2)(D).

40.     Employers must pay wages during an employee's meal breaks if the employee's mealtime is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997); 29 C.F.R. Sec. 785.19 and 29 C.F.R. Sec. Sec. 552.102.

41.     Defendants' live-in Caregivers are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.

42.     The Named Plaintiffs were frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores.  The Named Plaintiffs routinely failed to get five hours of uninterrupted sleep time because of these frequent interruptions.

43.     Employers have a "non-delegable" duty under the FLSA to maintain accurate records of its employees' hours.  *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 363 (2d Cir. 2011) (citing 29 U.S.C. § 211(c)); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (Friendly, J) (employers cannot discharge their duty of accurate record keeping and appropriate payment to their employees).

44.     "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours."  *Kuebel,* 643 F.3d at 363; *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir.1998).

## V.     FACTS

45.     Defendants hired Mr. Kolonziaa  to work as a live-in Caregiver on May 21, 2021, and she worked for Defendants until November 11, 2023.

46.     Defendants hired Ms. May-Javeed to work as a live-in Caregiver on December 9, 2020, and she worked for Defendants until May 30, 2023.

47.     At all relevant times, Defendants have employed over 200 personal care assistants ("PCAs") and other caregivers, employees (collectively, "live-in Caregivers") to live with Defendants' participants ("Consumers") and to assist the Consumers with eating, meal preparation, dressing, bathing, personal hygiene, light housekeeping, laundry, and errands. See, https://www.alliedcommunityresources.org/provider-information/. Last visited February 20, 2024.

48.     The job of the PCA is to offer support with things that the patient (Consumer) can't do on his/her own due to sickness, old age, mental or physical disability. See, https://www.alliedcommunityresources.org/provider-information/. Last visited February 20, 2024.

49.     Defendants train the PCA and require the PCA to undergo a mandatory application process in order to be considered to provide services to consumer. See, https://www.alliedcommunityresources.org/provider-information/. Last visited February 20, 2024.

50.     Defendants employ more than 200 live-in Caregivers to work round-the-clock in Connecticut.

51.     Defendants employ live-in  Caregivers including Plaintiffs and assign them to live with Defendants' Participants (hereinafter, "clients"), who require assistance caring for themselves throughout the day.

52.      Defendants' live-in caregivers perform non-exempt tasks including assisting Defendants' clients with personal care and activities of daily living such as

showering, toileting, dressing, feeding, ambulating; assisting with meal planning and preparation; assisting with light home maintenance such as laundry, vacuuming, linen change, bathroom/kitchen cleaning; provide medical reminders; perform solution for dementia or Alzheimer's and; provide 24 hour presence.

53.     The job responsibilities and duties of Defendants' live-in caregivers include working round-the clock to provide care to Defendants' clients at the clients' homes or at Defendants' residential care establishments.

54.     In particular, Defendants' live-in Caregiver's non-exempt duties include: activities of daily living, including cooking for and serving breakfast, lunch and dinner to customer; bathing customer as needed; assisting customer change clothing and underwear/diaper during the day and night as needed; helping customer put on and take off customer's clothes every day; sitting with client and watch customer eat food and watch television and; physically watching over customer "at all times" and remaining within eye and earshot of customer, including placing an electronic monitoring device in customer's room to monitor to customer at all times including at nighttime; assisting customer with incontinence; assisting customer with personal hygiene; assisting customer with taking medication and; escorting customer for medical appointments.

55.     Defendants assign their live-in Caregivers to sleep on-site so that the live-in Caregivers can help and be with their clients "at all times" due to the severe medical conditions of the clients, such as Alzheimer's disease, Dementia, amongst other medical conditions.

56.     Defendants assign their live-in Caregivers to provide non-medical Home Care services to Defendants' clients, including for example, general housekeeping

companionship personal care, chores, respite care, medical reminder, transportation to appointments and for activities, meal preparation, turning client over in bed and other individual needs of the clients.

57. Defendants have a policy or practice of crediting their live-in caregivers with 24 hours per day and paying them per diem during each live-in shift of 24 hours.

58. Defendants paid a day rate to their live-in Caregivers but did not pay overtime as required by law, even though Defendants credited their live-in Caregivers with 168 hours (24 hours x 7 live-in shifts) per workweek when they work the full 7 days of the workweek, with 128 hours being overtime hours in the said workweek.

59. For example, during the workweek of September 3, 2023, to September 9, 2023, Mr. Kolonziaa worked as a live-in Caregiver for all seven days of the workweek. Defendants paid him a day rate of $319.97 for each of the 7 days of that workweek.

60. Over a 7-day workweek, Mr. Kolonziaa was credited 168 hours of work time, with 128 hours as overtime work.

61. Defendants paid the Plaintiffs and all other live-in Caregivers a day rate for their work and did not calculate and pay overtime premiums as required by 29 C.F.R. § 778.112.

62. During this week of September 3, 2023, to September 9, 2023, Defendants paid Mr. Kolonziaa a total of $2,239.79 for working 7 full days at the day rate of $319.97 that week, with a credit of 168 hours work time.

63. Defendants should have calculated Mr. Kolonziaa's overtime by dividing

$2,239.79 by 168 hours (7 live-in shifts x 24 hours), to determine his hourly rate of **$13.33** ($2,239.79/168), which is **less than** the prevailing minimum wage of not less than fifteen dollars per hour, effective June 1, 2023. See, Conn. Gen. Stat. Ann. § 31-58(i)(1).

64.     Defendants were required to pay and did not pay Mr. Kolonziaa one and a half times the prevailing minimum wage of not less than **fifteen dollars per hour**, for the hours he worked over forty that workweek.

65.     During the workweek of May 7, 2023, to May 13, 2023, Defendants paid Ms. May-Javeed a total of $756.00 for working 4 full days at the day rate of $189.00 that week, with a credit of 96 hours work time that workweek.

66.     Defendants should have calculated Ms. May-Javeed's overtime by dividing $756.00 by 96 hours (4 live-in shifts x 24 hours), to determine her hourly rate of **$7.87** ($756.00/96), which is **less than** the prevailing minimum wage of not less than **fourteen dollars per hour**, effective July 1, 2022. See, Conn. Gen. Stat. Ann. § 31-58(i)(1).

67.     Defendants were required to pay and did not pay Ms. May-Javeed one and a half times the prevailing minimum wage of not less than fourteen dollars per hour, for the hours she worked over forty that workweek.

68.     Defendants paid their live-in caregivers less than the minimum fair wage or overtime wage in at least a workweek, in per se violation of the CMWA. See, Conn. Gen. Stat. Ann. § 31-60(a).

69.     Defendants employed live-in caregivers for at least a workweek longer than forty hours, and the live-in caregivers did not receive remuneration for his or her employment in excess of the forty hours at a rate not less than one and one-half times the

regular rate or the prevailing minimum fair wage, in per se violation of the CMWA, Conn. Gen. Stat. Ann. § 31-76c, § 31-60(a).

70.   Had Defendants furnished the proper weekly paystubs to Mr. Kolonziaa as mandated by Conn. Gen. Stat. Ann. § 31-13a, the paystub for the workweek of September 3, 2023, to September 9, 2023, should have reflected the following:

   a.   Hourly rate of Pay: $15.00 per hour

   b.   Straight pay: 40 hours x $15.00/hour = $600.00

   c.   Overtime pay: 128 hours x $15.00/hour x 1.5 = $2,880.00

   d.   Gross Wage: $3,480.00

71.   In this workweek, Defendants underpaid Mr. Kolonziaa, **$1,240.21** ($3,480 - $2,239.79).

72.   Had Defendants furnished the proper weekly paystubs to Ms. May Javeed as mandated by Conn. Gen. Stat. Ann. § 31-13a, the paystub for the workweek of May 7, 2023, to May 13, 2023, should have reflected the following:

   a.   Hourly rate of Pay: $14.00 per hour

   b.   Straight pay: 40 hours x $14.00/hour = $560.00

   c.   Overtime pay: 56 hours x $14.00/hour x 1.5 = $1,1176.00

   d.   Gross Wage: $1,736.00

73.   In this workweek, Defendants underpaid Ms. May-Javeed, **$980.00** ($1,736 – $756.00).

74.   As a result of the foregoing, Defendants knowingly and willfully failed to pay Plaintiffs and the other live-in Caregivers the full wages that they were due for each

workweek they worked and instead Defendants retained those wages for their own use and benefit.

## VI.     THE COLLECTIVE ACTION

75.     Plaintiffs bring Counts One, Three and Five on behalf of themselves and all other live-in Caregivers Defendants employed and assigned to "live" with their clients during the period from February 21, 2021, until the date of Defendants first correct the violations alleged herein or the date of final judgment in this matter, whichever occurs first.

76.     Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and the other live-in Caregivers are similarly situated in that they are all subject to Defendants' common plan or practice of requiring them to live on the premises of their clients because they needed assistance at all hours, and failing to pay the prevailing minimum fare wage when Defendants paid a day rate to Plaintiffs and other live-in Caregivers; failing to pay overtime premium for overtime hours when Defendants paid a day rate to Plaintiffs and other live-in Caregivers; in the alternative of the round-the-clock schedule Live-in Caregivers worked, failing to have a reasonable agreement in place in advance of employment to exclude sleeping time, meal time or period of free time from each live-in shift worked and failing to add the reasonable cost of food and lodging to the cash wage paid in order to compute the overtime pay.

## VII.    THE CONNECTICUT RULE 23 CLASS

77. Plaintiffs bring Counts Two, Four and Six under the Connecticut Minimum Wage Act, C.G.S. §§ 31-58 *et seq*., and Rule 23 of the Federal Rules of Civil Procedure, for themselves and on behalf of a class consisting of all "live-in" live-in Caregivers

Defendants employed in Connecticut during the period of February 21, 2022, until the date Defendants first correct the violations alleged herein or the date of final judgment in this matter, whichever occurs first.

78. Class certification for these Connecticut law claims is appropriate under Fed. R. Civ. P. 23 (a) and Fed. R. Civ. P. 23 (b)(3) because all the requirements of the Rules are met.

79. The class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed 200 or more live-in Caregivers who worked at least one 24-hours shift in Connecticut during the past two (2) years.

80. There are questions of law and fact common to the class, including whether the putative class members worked overtime but were not paid overtime in per se violation of Connecticut law; whether Defendants recorded and paid the class members for all hours worked during each live-in shift; whether Defendants paid less than the fair minimum wage when Defendants paid a day rate for each day worked and; whether Defendants paid overtime wage for overtime hours when Defendants paid a day rate for each day worked. In the alternative to the round-the-clock schedule Live-in Caregivers worked, whether Defendants failed to have an agreement in writing to exclude sleeping time from each live-in shift worked, whether Defendants failed to allow meal times in each live-in shift worked and, whether Defendants failed to add the reasonable cost of food and lodging to the cash wage paid in order to compute the overtime pay.

81. The named Plaintiffs' claims are typical of those of the class members. Plaintiffs' claims encompass the challenged practices and course of conduct of Defendants. Furthermore, Plaintiffs' legal claims are based on the same legal theories as

the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiffs and to the class.

82. The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs' claims are not antagonistic to those of the putative class and they have hired counsel skilled in the prosecution of class actions.

83. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

## VIII.   LEGAL CLAIMS

**COUNT ONE:**          *Isaac Kolonziaa and Michele May-Javeed, individually and on behalf of others similarly situated v. Allied Community Resources, Inc.* **: VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

84. Based on the foregoing, Defendant Allied Community Resources, Inc.'s conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

85. Plaintiffs and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation for all hours worked, to minimum wage, overtime pay for all overtime hours worked, and to liquidated damages, attorneys' fees and court costs.

**COUNT TWO:**          *Isaac Kolonziaa and Michele May-Javeed, individually and on behalf of others similarly situated v. Allied Community Resources, Inc.:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58,** *et seq.*

86. Based on the foregoing, Defendant Allied Community Resources Inc.'s conduct in this regard violated the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

87. Accordingly, Plaintiffs and all other live-in Caregivers in Connecticut are entitled to damages of the full amount of the minimum wage and overtime wage they are entitled, less any amount actually paid to him or her by the Defendants, or penalty damages at twice the full amount of the minimum wage and overtime wage they are entitled, less any amount actually paid to him or her by the Defendants and, to interest, reasonable attorney's fees and costs.

**COUNT THREE:**     ***Isaac Kolonziaa and Michele May-Javeed, individually and on behalf of others similarly situated v. Allied Community Services, Inc.* : VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201, *et seq.***

88. Based on the foregoing, Defendant Allied Community Services, Inc.'s conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

89. Plaintiffs and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation for all hours worked, to minimum wage, overtime pay for all overtime hours worked, and to liquidated damages, attorneys' fees and court costs.

**COUNT FOUR:**     ***Isaac Kolonziaa and Michele May-Javeed, individually and on behalf of others similarly situated v. Allied Community Services, Inc.*: VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58, *et seq*.**

90. Based on the foregoing, Defendant Allied Community Services Inc.'s conduct in this regard violated the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

91. Accordingly, Plaintiffs and all other live-in Caregivers in Connecticut are

entitled to damages of the full amount of the minimum wage and overtime wage they are entitled, less any amount actually paid to him or her by the Defendants, or penalty damages at twice the full amount of the minimum wage and overtime wage they are entitled, less any amount actually paid to him or her by the Defendants and, to interest, reasonable attorney's fees and costs.

**COUNT FIVE:** *Isaac Kolonziaa and Michele May-Javeed, individually and on behalf of others similarly situated v. Department of Social Services for the State of Connecticut* **: VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

92. Based on the foregoing, Defendant Department of Social Services for the State of Connecticut's conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

93. Plaintiffs and all other similarly situated live-in Caregivers who opt into this litigation are entitled to compensation for all hours worked, to minimum wage, overtime pay for all overtime hours worked, and to liquidated damages, attorneys' fees and court costs.

**COUNT SIX:** *Isaac Kolonziaa and Michele May-Javeed, individually and on behalf of others similarly situated v. Department of Social Services for the State of Connecticut* **: VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58,** *et seq.*

94. Based on the foregoing, Defendant Department of Social Services for the State of Connecticut's conduct in this regard violated the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

95. Accordingly, Plaintiffs and all other live-in Caregivers in Connecticut are entitled to damages of the full amount of the minimum wage and overtime wage they are entitled, less any amount actually paid to him or her by the Defendants, or penalty

damages at twice the full amount of the minimum wage and overtime wage they are entitled, less any amount actually paid to him or her by the Defendants and, to interest, reasonable attorney's fees and costs.

## **DEMAND FOR RELIEF**

Plaintiffs claim:

a.  Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b.  Certification of the Connecticut class action pursuant to Fed. R. Civ. P. 23(b)(3) and the appointment of Plaintiffs and her counsel to represent those classes;

c.  An award of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

d.  An award of unpaid overtime wages under the Connecticut Minimum Wage Act, C.G.S. § 31-68;

e.  An award of liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

f.  An award of penalty damages under Connecticut Minimum Wage Act, C.G.S. § 31-68;

g.  Attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

h.  Attorneys' fees under the Connecticut Minimum Wage Act, C.G.S. § 31-68;

i.  Interests and costs;

j.  Injunctive relief in the form of an order directing Defendants to comply with the Connecticut Minimum Wage Act; and

k.  Such other relief as in law or equity may pertain.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

Isaac Kolonziaa and Michele May-Javeed,
individually and on behalf of other
similarly situated individuals


By:/s// ct05114
Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT  06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: NEgbarin@aol.com
Their Attorney